(No. 11533.—Decree modified and affirmed.)
GEORGE F. JORDAN, Appellee, *vs.* JOHN W. JORDAN *et al.*
Appellants.

*Opinion filed December 19, 1917.*

1. WILLS—*testator's intention must be clear for court to supply omitted words in construing a will.* Where a testator has not accurately or completely expressed his meaning by the words he has used and it is plain that certain words have been omitted which would effectuate his obvious intention such words may be supplied, but the court cannot indulge in conjecture as to the supposed intention of the testator or add words to express an intention which is not plain and unmistakable.

2. SAME—*devise of remainder in fee is not limited by subsequent unintelligible clause.* Where a testator has devised a remainder in fee by one of the clauses of his will, a subsequent clause intended to limit such devise but which is unintelligible when read in connection with the rest of the will cannot operate to limit the fee previously devised.

3. SAME—*when term "bequest" is not limited to personal property.* Where a testator has used the words "bequest" and "devise" indiscriminately in the will, a charge against the "bequest" to one of the devisees or legatees will not be restricted to his interest in the personal property.

4. SAME—*when codicil refers to death of devisee in lifetime of testator.* Where a codicil refers to the death of one of testator's sons, provides that the share given him by the will shall go equally to four other named children in fee simple, and concludes with the statement that "in case of the death of one or more of the children named in this clause, his or her share shall be divided equally between the survivor or survivors," the devise over refers only to the death of any one of such children in the lifetime of the testator.

5. SAME—*court should not allow interest where will charges a sum against the interest of a devisee.* Where a testator provides for the deduction of $1000 from the interest of one of the devisees in the will, the court, in partitioning the property among the devisees, should not allow interest on the sum charged where said devisee owes nothing to the estate, as the balance is due to him and not from him.

CARTER, C. J., dissenting.

APPEAL from the Circuit Court of DeWitt county; the
Hon. GEORGE A. SENTEL, Judge, presiding.

BARRY & MORRISSEY, and RAYBURN H. WILSON, guardian *ad litem,* for appellants.

HERRICK & HERRICK, and E. B. MITCHELL, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

George F. Jordan filed a bill in the circuit court of DeWitt county for the partition of 235 acres of land and certain other real estate devised by the will of James Jordan, and the court decreed that John W. Jordan, Mary M. Greene, George F. Jordan and Nellie Jordan were each entitled to an undivided one-fourth of the real estate in fee simple, subject to the payment of legacies, and that the devise to John W. Jordan was subject to the payment of $1000 to the estate of the testator, with five per cent interest from one year after the testator's death. John W. Jordan and Gertrude Jordan, to whom he had conveyed his interest, appealed from the decree, and insist that the court erred in decreeing that George F. Jordan and Nellie Jordan had title in fee simple instead of a base fee, and in decreeing that the title of John W. Jordan was subject to the payment of $1000 and interest to the estate of the testator.

The will of James Jordan, after directing the payment of the debts and funeral expenses, gave all of his real estate and personal property to his wife for life. The controversy arises out of the succeeding clauses of the will and the second codicil. The clauses of the will in question are as follows:

"*Fifth*—After the death of my said wife, Johanna Jordan, all of my real estate hereinbefore described, and all the other real estate I may own at the time of my death and devised to her, and all of my personal property, including all money on hand at time of her death, and all property of every kind and character, shall descend to and all title and interest therein held by her at the time of her death shall descend to and vest in my four children, viz.,

John W. Jordan, Michael C. Jordan, Mary M. Greene, George F. Jordan and Nellie Jordan, share and share alike, as their sole and absolute property forever, in fee.

"*Sixth*—I give, devise and bequeath to my two sons James J. Jordan and Thomas A. Jordan, each, the sum of $2000, I having paid them large sums of money during my lifetime.

"*Seventh*—All money that may be due and owing to me or my estate at the time of my death from any of the above named children, or any debts that my estate may be compelled to pay for any of them after my death by reason of my being on any note or other security, or any debts that I may pay for them before my death and remain unpaid by them at the time of my decease, shall be charged against them and deducted from his or her share of my estate, excepting, however, that it is my will that nothing be deducted from the bequests of James J. Jordan and Thomas A. Jordan, and that the sum of $1000 be deducted from the bequest of John W. Jordan.

"*Eighth*—I give, devise and bequeath to my three grandchildren, being the children of my deceased son, Edward M. Jordan, viz., Edward Carroll Jordan, Mary Jordan and Jerome Jordan, each the sum of $50. In order that all further disputes, controversy or litigation may be avoided, I make the following statement as a reason why I have not willed or devised more of my estate to the widow and heirs of my deceased son, Edward M. Jordan, viz., because I have paid to him and for him, in cash and otherwise, and assisted him in different ways during my lifetime and during his lifetime to such an extent that he or they would be owing the estate more than their share if the same were equally divided with the other heirs named.

"*Ninth*—In case of the death of any one or more of my above named heirs without issue who are made devisees under this will, before or after my death or before the death of my said wife, then and in that event the share

herein devised to them shall be equally divided between John W. Jordan, Michael C. Jordan, Mary M. Greene, George F. Jordan and Nellie Jordan, share and share alike, as an estate in fee simple, and in case of one or more of the devisees after my death, then their share shall descend according to the laws of descent in this State."

By a codicil the testator revoked the bequests of $2000, each, to his sons James and Thomas, and directed that their amount should be divided equally among his children named in the fifth clause of the will, and instead directed that James and Thomas should receive $25, only. On September. 23, 1913, the testator's wife and his son Michael C. Jordan having died in the meantime, the testator executed a second codicil, by the first clause of which he directed that the sum of $3000 should be paid to the three children of his deceased son Edward, to be divided equally among them. The second clause of the codicil is as follows:

"*Second*—My son M. C. Jordan having died since the making and execution of my said last will and codicil, I give, bequeath and devise the share to him given by me in said last will and testament and codicil thereto, to my following named children, share and share alike, viz., John W. Jordan, Mary M. Greene, George F. Jordan and Nellie Jordan, in fee simple, and in case of the death of one or more of the children named in this clause, his or her share shall be divided equally between the survivor or survivors, otherwise ratifying and confirming my said last will and testament and the codicil thereto signed by J. .C. Myers and Sherman G. Hull as witnesses."

The testator left as his heirs, his sons, John W. Jordan, James J. Jordan and George F. Jordan, his daughters, Mary M. Greene and Nellie Jordan, and the three children of his deceased son Edward. John W. Jordan and Mary M. Greene are married and have children, but neither George F. Jordan nor Nellie Jordan has ever had a child. The fifth clause devised the remainder to the five children

named, in fee simple. The object of the ninth clause was
to limit the estate thus devised, but it is hard to tell exactly
what was intended. None of the children except Michael
did die either before or after the death of the testator or
before the death of his wife, and the testator changed his
will to provide for the changed condition caused by this
death and the subsequent death of his wife, by his second
codicil. A consideration of the meaning of "death  *  *  *
without issue,  *  *  *  before or after my death or be-
fore the death of my wife," is unnecessary, therefore, ex-
cept as it may throw light upon the meaning of the rest
of the clause. The purpose of this expression was prob-
ably to postpone the vesting of the estate so that only such
of the children named as survived both the testator and his
wife should take the estate. No mention of survivorship is
made, however, and if such was the testator's intention he
failed to express it. The concluding sentence of the clause
is senseless as written. It probably refers to the death of a
devisee, though it does not say so. The appellants argue
that this sentence is the antithesis of that in the earlier part
of the clause, and as the latter refers to death without is-
sue the former should be regarded as referring to death
leaving issue, and the words "leaving issue" should be in-
serted after "death." It may be that such was the intention
of the testator, but he may as well have referred to the
death of himself and his wife. His will was to speak from
his death, and having, as he supposed, provided in the first
part of the clause for the contingency of the death of any
devisee before his own and his wife's death, he may have
undertaken to provide that in case of death of a devisee
after his own and his wife's death the property devised
should descend according to the laws of descent,—that is,
that the devisee's estate should be a fee simple. Clearly,
the testator has not accurately or completely expressed his
meaning by the words he has used, and if it were plain
that certain words have been omitted the insertion of which

would effectuate the obvious intention of the testator such words might be supplied. (*Glover* v. *Condell,* 163 Ill. 566; *Young* v. *Harkleroad,* 166 id. 318; *Lash* v. *Lash,* 209 id. 595; *Eyer* v. *Williamson,* 256 id. 540.) It may be that the testator intended what the appellants claim, but it is not clear that he did not intend what the appellee claims. In the interpretation of a will the court cannot indulge in conjecture as to the supposed intention of the testator or add words to his will to express an intention which is not plain and unmistakable. The sentence in question being unintelligible when read in connection with the rest of the will had no effect to limit the fee devised by the fifth clause. The devise over in the second clause of the second codicil in case of the death of any of the devisees named refers only to death in the lifetime of the testator. The decree of the circuit court as to the interests of the parties is right without regard to the manner of arriving at the result.

The charge of $1000 against the interest of John W. Jordan is objected to because, the deduction having been directed to be made from the bequest to John W. Jordan and the personal property being insufficient to pay the debts and legacies, it is argued, John W. Jordan will receive no bequest and there will be nothing from which the $1000 may be deducted. In the second, third, fourth, sixth and eighth clauses of his will the testator disposes of his property, in some cases referring to real property only, in others to personal property only, and in each case the words of gift are, "I give, devise and bequeath." He made no distinction between a devise and a bequest but used the words indiscriminately as they are frequently popularly understood. By the seventh clause of the will he directs that all indebtedness of any of his children to his estate shall be deducted from their shares of the estate and $1000 shall be deducted from the bequest to John W. Jordan but nothing from the bequests to James and Thomas. It is apparent from reading the will and codicils that the testator believed James

and Thomas had received all they were entitled to from him and that he therefore gave them each the nominal sum of $25; that he intended John to be charged with $1000, to be deducted from what was given to him under the will; that he made no distinction between his real estate and personal property but applied the terms appropriate to each indiscriminately to both, and that the words "bequest of John W. Jordan," in the seventh clause of the will, are not to be restricted to his interest in the personal property. The court, however, improperly allowed interest on the $1000. John W. Jordan owed nothing to the estate. The amount which he was to receive was to be reduced so much. The balance was due to him and not from him, and he should not be charged with interest.

The decree will be modified by striking out the words "with interest after one year at five per cent," in connection with the charge of $1000 against John W. Jordan, and so modified will be affirmed. Each party will pay one-half the costs of this court.    *Decree modified and affirmed.*

Mr. CHIEF JUSTICE CARTER, dissenting:

I do not agree with the opinion as to the construction of the will as to the charge of $1000 made against the interest of John W. Jordan. The decree found, and the opinion holds, that this charge of $1000 was a lien on the interest of Gertrude in the real estate conveyed to her by her father. The record shows that the testator's personal estate was insufficient to pay his debts and the money legacies, and that John W. Jordan did not receive any "bequest," using that term in its technical sense; that there was nothing, therefore, from which the $1000 could be deducted unless it is taken from his interest in the real estate. By the seventh clause of the will the testator provided that all money due and owing to him or his estate at the time of his death, from his children, or which his estate might pay by reason of his being security on any note, or any debts that he

might pay for them before his death and remaining due to him, should be charged to them and be deducted from his or her share of the estate, "and that the sum of $1000 be deducted from the bequest of John W. Jordan." It seems to me, from reading this clause in connection with the rest of the will, that the testator intended to make a distinction between a "bequest" and a "devise," and between a "bequest" and the "share" of a child in his estate. It is true that the connection in which the word is used may show that "bequest" is used as meaning "devise" or meaning both; that while the word "devise" applies strictly only to gifts of land or interest in land, it is often used synonymously with "bequest" or "bequeathed." *Evans* v. *Price,* 118 Ill. 593; *Rickman* v. *Meier,* 213 id. 507; 40 Cyc. 993.

It may be that at the time the will was drafted the testator supposed he would have enough personal property to pay more than his debts, and that therefore there might be a "bequest," under the fifth clause, of some amount to his son John W. Jordan. I can reach no other conclusion than that he used in this same clause the word "bequest" in its technical sense when applied to the shares of James J. and Thomas A., and, construing the entire will together, I think it was the intention to use the word "bequest," when applied to John W. Jordan, in its technical sense. The rule is that a legacy is not a charge against real estate unless made so by the will, and if the personal estate is insufficient to pay it the legacy must abate. *Haynes* v. *McDonald,* 252 Ill. 236.

In my judgment the decree incorrectly found this $1000 charge a lien upon the interest of the real estate that had been conveyed by John W. Jordan to his daughter Gertrude.